UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

EUGENE BARATTO AND
TEXTURES LLC,

       Plaintiffs,

       v.                                                                  Case No. 08-CV-657

BRUSHSTROKES FINE ART, INC,

       Defendant.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTIONS FOR RECONSIDERATION, MOTION TO ALTER OR AMEND JUDGMENT, AND FOR RELIEF FROM JUDGMENT.**

       Incredibly, Baratto asks this Court to reconsider its decision as being a "manifest error of law" when the construction of the claim term adopted by the Court was that which ***Baratto himself proposed*** on summary judgment. In construing the term "color layer," this Court explicitly agreed "with Baratto's construction" that the "thermoplastic layer" can be "the printed ink itself, which has thermoplastic properties." Baratto won that one—he got his construction. However, this Court then held that Baratto had not properly demonstrated that Brushstrokes' products meet that claim element, and entered summary judgment.

       Unhappy that this Court found that Baratto had not submitted timely, appropriate evidence to demonstrate this element of Claim 1 of the '041 Patent was in any accused product, Baratto now seeks to do away with that burden of proof by having this Court re-construe the claim to ignore the definition of "color layer" given in the patent specification. Baratto now asks this Court to do away with the thermoplastic requirement entirely, so that the element merely requires ink of any sort, whether thermoplastic or not. This is an entirely new construction

proposed by Baratto. Baratto's motion should be denied because (1) his new claims construction position is waived, and (2) because it is incorrect. The color layer of Claim 1 must be thermoplastic.[1]

## ARGUMENT

**I.    STANDARD ON MOTIONS FOR RECONSIDERATION, TO ALTER OR AMEND JUDGMENT, OR FOR RELIEF FROM JUDGMENT.**

This Court has construed "motions for reconsideration" after a judgment is entered as falling under Federal Rule of Civil Procedure 59 (Altering or Amending a Judgment). *See Joseph Van Patten v. Matthew Frank, et. al,* Order in Case No. 06-C-374-C (W.D. Wis. Aug. 24, 2007). It is not proper to move for reconsideration every time one is dissatisfied with a decision, and it is not to be used merely as an opportunity to reargue positions or introduce other evidence. *Id.* This Court is well familiar with the standard for motions for reconsiderations. As this Court has recently explained:

> The purpose of a motion to reconsider is narrow and limited to bringing the court's attention to manifest errors of law or fact or newly discovered evidence. *Bordelon v. Chicago School Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000); *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996). It is **not intended as an opportunity for a party to reargue the merits** of a parties' previous position, to introduce evidence previously available, tender new legal theories or rehash old arguments. *Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363, 368 (7th Cir. 2003); *Easypower Corp. v. Alden Corp.*, 522 F. Supp. 2d 1060, 1063) (N.D. Ill. 2007). Generally, **if the parties' sole purpose is to reargue claims construction, this is not grounds for a motion to reconsider.** *Digene Corp. v. Third Wave Technologies, Inc.*, No. 07-c-022-bbc, 2007 WL 5614110, at *1 (W.D. Wis. 2007) (reconsidering claims construction order because court had mistakenly understood plaintiff's position at claims construction hearing).

---

[1] Brushstrokes still believes its proposed construction was correct, but at a minimum, both parties agreed on summary judgment that the color layer had to be thermoplastic, as explained below.

*Sunbeam Prods. v. Homedics,Inc,* Decision and Order in 08-CV-376-slc (W.D. Wis. July 6, 2009)(emphasis added). This Court continued, "[I]n nearly every case, one party will lose a motion but that is not a basis to allow reargument *ad naseaum* every time. ….Otherwise, courts would find themselves in the sisyphusian task of revisiting every failed argument presented by a party." *Id.*

Under Rule 60, the only grounds for relief are under subsection (a), clerical mistakes and under subsection (b), a list of enumerated potential bases for relief. Fed.R.Civ.P. 60(b); *see also United States v. Deutsch*, 981 F.2d 299, 301 (7th Cir. 1992) (explaining that Rule 60(b) motions "must be shaped to the specific grounds for modification or reversal listed in 60(b)— they cannot be general pleas for relief"). Specifically, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief. Fed.R.Civ.P. 60(b). *See id.* Rule 60(b) is "an extraordinary remedy and is granted only in exceptional circumstances." *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006) (internal quotation omitted). Its purpose is not to merely allow parties to rehash arguments or introduce evidence that could have been introduced before or could be pursued on appeal. Rather, "[a] motion under Rule 60(b) is a collateral attack on the judgment and the grounds for setting aside a judgment under this rule must be something that could not have been used to obtain a reversal by means of a direct appeal." *Kiswani v.*

*Phoenix Sec. Agy., Inc.*, 584 F.3d 741, 743 (7th Cir. 2009)(citing *Bell v. Eastman Kodak Co.*, 214 F.3d 798, 801 (7th Cir. 2000)).

Baratto's motion does not meet the proper standards for either a Rule 59 or a Rule 60 motion as all it does is reargue claims construction based on evidence available to Baratto previously. Accordingly, Baratto's motion is improper and should be denied.

## II. PLAINTIFF REQUESTS THAT THE COURT RECONSIDER ONLY A VERY SMALL PART OF THIS COURT'S SUMMARY JUDGMENT RULING.

As an initial matter, it is important that the Plaintiff's motion for reconsideration be properly characterized. Plaintiff's motion only requests that this Court reconsider a very small portion of its decision—the reconsideration of the construction a single term from Claim 1 of the patent ("color layer"), which accordingly applies to only still unidentified IKEA Hallaryd four images that Plaintiffs' expert actually tested.[2] (See Dkt. # 70, p. 22).

Plaintiff does not contest *any* of the other rulings and findings of undisputed fact made in this Court's opinion which still render summary judgment proper for, at a minimum, non-infringement of the vast majority of the hundreds of accused products, and for invalidity and unenforceability. For example, in his brief, the Plaintiff *does not* ask this Court to reconsider any of the following evidentiary rulings:

- This Court's findings on the propriety of Emslander's Affidavit, wherein the court struck and disregarded much of that affidavit as improper. (Dkt. # 70, pp. 5-7). As to the additional, late testing, the Court noted that "Baratto could have and should have bought samples if he wanted them—in fact, he should have done so before filing his lawsuit." (*Id.*, p. 7).

---

[2] This Court determined that it could figure out that four reproductions were tested. (Dkt. # 70, pp. 4-5). But neither Defendant nor the Court have ever been told the names of those images to determine which four of the six IKEA Hallaryd images made by Brushstrokes are at issue. (*See* Dkt. # 70, p. 22)(noting unidentified Hallaryd images). The prejudice to Brushstrokes in not knowing which precise Hallayrd images were tested even at the post-judgment motion stage is obvious.

- This Court's findings that it should disregard certain paragraphs and statements in Plaintiff Baratto's affidavit. (Dkt. # 70, pp. 8-10).

Baratto also does not challenge the undisputed facts found by this Court in the fact section of its opinion, including, for example, that:

- Brushstrokes has been using the same general process and materials to produce its art reproductions since Atelier started using it in 1995, except for the addition of a protective coating. (Dkt. # 70, p. 11, 14-16). Recall that this predates the filing of the patent application that led to the '041 Patent in March, 1996. (Dkt. # 61, PFF 71).

- That Brushstrokes' images contain areas with varying textures and many areas of texture at random points across the image, and that area of an image with greater texture are thinner and more prone to tearing and cracking than areas with little texture. (Dkt. # 70, pp. 14 & 16). This Court similarly found that "[b]ecause all Brushstrokes's images have unique texturization, one cannot conclude from the testing of one image that another image would perform similarly." (*Id.* at p. 18).

- That Baratto did not specify which art reproductions he was accusing in his complaint. (Dkt. # 70, pp. 16 & 17).

- That when Brushstrokes' expert Hasting tested entire art reproductions, "[i]n all cases, the plastic tore before any strain could be seen on the canvas sheet" and that Hasting has observed thousands of stretching of plastic sheets glued to canvas and the plastic breaks before the canvas. (Dkt. # 70, p. 18).

Further, it is important to note that Baratto does not challenge this Court's determinations on "Grouping of Accused Products." (*See* Dkt. # 70, pp. 21-23). In that portion of this Courts' decision, this Court ruled that Baratto had failed to provide sufficient evidence that every product made by Brushstrokes actually functions in the same manner to demonstrate that any grouping was appropriate. (Dkt. # 70, p. 22). Accordingly, this Court held that "Brushstrokes is correct that Baratto's evidence of infringement is limited to those products identified in Emslander's original report: four unidentified Hallaryd brand art reproductions." (*Id.*). This Court continued to hold that even as to the Hallaryd line of products, Baratto's evidence was insufficient in the following way:

> Another problem arises, however, because Baratto has failed to show that all Hallaryd brand art reproductions function in the same manner. It is undisputed that the texture of each of Brushstrokes' reproductions is unique and that areas with more texture tear more easily when stretched. Emslander fails to account for these differences in his original and rebuttal reports. Emslander states in his report that he randomly selected 6 strips from each of the reproductions. Therefore, it is impossible to know whether Emslander's test results can be extrapolated to all of Brushstrokes's Hallaryd images. In fact, as Brushstrokes points out, Emslander had to retest one reproduction because the thermoplastic layer already had cracked in areas with high texture. This tends to support the conclusion that elongation will depend on the amount of texture in any given image.

(*Id.*). These findings are not challenged in Baratto's motion for reconsideration and resulted in a dismissal of the bulk of Baratto's lawsuit. These findings should not be disturbed even if the Court reconsiders.

Accordingly, all of these undisputed and unchallenged findings should be left undisturbed even if this Court reconsiders its decision on the meaning of "color layer."

### III. THIS COURT SHOULD DECLINE PLAINTIFF'S REQUEST TO RECONSIDER ITS CONSTRUCTION OF THE TERM "COLOR LAYER," AS IT ADOPTED THE CONSTRUCTION THAT THE *PLAINTIFF* PROPOSED.

#### A. BARATTO SHOULD BE HELD TO THE CLAIM CONSTRUCTION HE ADVOCATED ON SUMMARY JUDGMENT, WHEREIN HE AGREED THAT THERE IS A REQUIREMENT THAT THE "COLOR LAYER" OF CLAIM 1 OF THE '041 PATENT BE "THERMOPLASTIC."

Plaintiff's proposed claim construction was not previously proposed and is contrary to his proposed claim construction on summary judgment. Baratto should be held to his position on summary judgment as his new arguments are not proper on a motion for reconsideration and are waived.

On summary judgment, Brushstrokes argued that the "color layer" of Claim 1 required that there be two separate thermoplastic plastic layers—a plastic layer and a separate colored

plastic layer fused with it. (*See* Dkt. # 45, p. 17-18). Brushstrokes quoted the part of the specification where the terms "color layer" and "colored sheet" are defined: "[t]he colored sheet of the invention comprises a thermoplastic layer and a printed color layer that is also thermoplastic." (*Id.*, citing PFF 16). The specification continues, "[b]y thermoplastic, it is mean that the material exhibits plastic deformation or flow when heated." (*Id.*). Brushstrokes asserted that there was no evidence it had a thermoplastic color layer in its products. (*See id.*).

In response to Brushstrokes' motion, Plaintiff Baratto set forth his proposed claim construction. In that response, Baratto stated:

> The "colored sheet" is described in the '041 Patent's detained description. The specification states "The colored sheet of the invention comprises a thermoplastic layer and a printed color layer that is also thermoplastic. By thermoplastic, it is meant that the material exhibits plastic deformation or flow when heated."
>
> **Thermoplastic as used in the context of the printed color layer is an adjective**, i.e. has plastic deformation or flow when heated. The specification does not indicate that the color layer is a "thermoplastic layer." **It indicates that the color layer has thermoplastic properties.**

(Dkt. #52, p. 12)(emphasis added). Plaintiff further argued that under the '041 Patent, "**the printed ink has thermoplastic properties.**" (*Id.*)(emphasis added). Plaintiffs then cited to Emslander's affidavit's conclusory statement that Brushstrokes' ink has thermoplastic properties as their only purported evidence that Brushstrokes' products meets this element. (*Id.*, p. 13). This Court struck that part of the affidavit as untimely. (Dkt. # 70, pp. 25-26).[3]

---

[3] Again, Plaintiffs do not challenge the Court's ruling that Emslander's opinion on the evidence in Emslander's original report did not show that the color layer was thermoplastic, or the exclusion of his later opinion that those inks are thermoplastic. (See Dkt. # 70, pp. 25-26). Baratto only argues that this Court got the claim construction wrong. (Dkt. # 76, pp.3-8). Moreover, even if this Court did not strike that opinion as untimely it was based on no testing or other disclosed basis, and thus, was impermissibly conclusory. (*See* Dkt. # 59, pp. 12-13); *First Years v. Munchkin*, 575 F. Supp. 2d 1002, 1020 (W.D. Wis. 2008).

This Court then adopted **the Plaintiff's construction,** holding that the "thermoplastic layer" can be "the printed ink itself, which has thermoplastic properties." (Dkt. # 70, p. 24)("I agree with Baratto's construction.").

Plaintiff cannot now do an about face and argue for a new claim construction in a motion for reconsideration. Plaintiff's new post-judgment claim construction is waived. *See NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1296 (Fed. Cir. 2005) (waiver applied because RIM attempted to add a pull technology limitation to the claim that it did not raise before the trial court); *Super-Guide Corp. v. DirecTV Enter., Inc.*, 358 F.3d 870, 889 (Fed. Cir. 2004) (waiver applied because SuperGuide stipulated to construction of the term "meet" at the trial court); *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1363 (Fed. Cir. 1999); *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1426 (Fed. Cir. 1997); *American Standard, Inc. v. York Int'l Corp.,* 244 F. Supp. 2d 990, 993 (W.D. Wis. 2002)(post-trial change in claim construction argument was waived). As this Court has held many times, arguments not made in response to a summary judgment motion are waived. *See e.g. Wisconsin Investments, LLC v. Wells Fargo Bank, N.A.*, Decision and Order in 08-c-0223 (W.D. Wis. June 22, 1009)(citing *Harper v. Vigilent Ins. Co.*, 433 F.3d 521, 528 (7th Cir. 2005)(argument not properly presented to district court in response to motion for summary judgment is waived).

      **B.**    **THE SPECIFICATION REQUIRES THE COLOR LAYER TO BE THERMOPLASTIC.**

Plaintiff Baratto cites to several phrases from the '041 Patent that he did not cite to on summary judgment that state things like "printing can be done" in a certain way, "inks can be printed," etc. (Dkt. # 76, p. 3). Although its not clear, Baratto seems to be suggesting that these phrases support a construction of color layer in Claim 1 that does not require it to be thermoplastic. (*See id.*). However, there is no evidence in the record that any of the vaguely

referenced printing process referenced cannot be utilized to result in a color layer that is thermoplastic. There is no such evidence in the specification. Nor is there any expert evidence in the record to this effect. Plaintiff's cited passages fail to support his new construction in any way.

Moreover, even if those phrases did imply that the color layer did not have to be thermoplastic (they do not), those phrases then clearly describe embodiments other than the one claimed in claim 1. (*See* Dkt. # 51, Exh. 2, '041 Patent, Claim 9). As the Plaintiff even acknowledges, "the law does not require all claims in a patent to cover all embodiments; in fact, some disclosed embodiments may be within the scope of some claims but not others." (Dkt. # 76, p. 5)(citing *PSN Illinois, LLC v. Ivoclar Vivadent, Inc.,* 525 F.3d 1159, 1166 (Fed. Cir. 2008).

Plaintiff also argues that this Court's claim construction improperly imports a limitation from the specification into the claim, and that the plain and ordinary meaning of "color layer" does not require that it be thermoplastic. (Dkt. # 76, pp. 5-6). While it is true that there is a claims construction rule against improperly importing a limitation from the specification into the claim, that is not what happened here. Rather, the Court construed the claim term consistent with and as it was defined in the specification by the patentee—that the color layer is "also thermoplastic." (Dkt. # 51, Exh. 2, '041 Patent at col. 5, lns. 27-31).

Claim terms should be examined "in the context of the entire patent." *Phillips v. AWH Corp.,,* 415 F.3d 1303, 1313 (Fed. Cir. 2005). The specification, within which the inventions are to be described in full, clear, concise and exact terms, is highly relevant to construction and is often the best guide. *Id.* 1315-1316; *ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003) ("the context of the surrounding words for the claim also must be considered in determining the ordinary and customary meaning of those terms"). Claim terms are construed as

a person of ordinary skill in the art would understand them, which is sometimes but not always the same as a lay definition of a term. *See Phillips,* 415 F.3d at 1313.

While claim terms should be given their plain and ordinary meaning where appropriate, a patentee is free to be his own lexicographer to define a term in the specification. *See Martek Biosciences v. Nutrinova,* 579 F.3d 1363, 1380 (Fed. Cir. 2009). "When a patentee explicitly defines a claim term in the patent specification, the patentee's definition controls." *Id.*; *see also, Phillips,* 415 F.3d at 1321 ("[t]he specification 'acts as a dictionary when it expressly defines terms used in the claims…'"). When such definitions are given, the patentee's definition governs even if it conflicts with a conventional meaning of the term. *3M Innovative Props. Co. v. Avery Dennison Corp.,* 350 F.3d 1365, 1374 (Fed. Cir. 2003).

In the specification of the '041 Patent, there is very clear guidance as to what is meant by the terms "color sheet" and "color layer" in Claim 1. The specification could not have been more clear when it defined "colored sheet" as comprising "a thermoplastic layer ***and*** a printed color layer ***that is also thermoplastic.*** By thermoplastic, it is meant that the material exhibits plastic deformation or flow when heated." (Dkt. # 51, Exh. 2, '041 Patent at col. 5, lns. 27-31). By this language, Baratto specified that the color layer was to be thermoplastic. This is the exact language that Baratto cited to when he argued for exactly that claim construction on summary judgment, which was the claim construction adopted by the Court. (*See* Dkt. # 52, p. 12; Dkt. # 70, p. 24).

### C. CONSTRUCTION OF THE TERM WAS PROPER ON SUMMARY JUDGMENT.

Plaintiff also complains that the Court should not have construed the claim at all because it was not in Brushstrokes' original request for claims construction. However, that is not a reason for this Court to reconsider its ruling. This Court commonly affords an opportunity to

construe claims on summary judgment, which occurs after at least some discovery and infringement contentions have been exchanged—exercises which help to shape the issues for the parties and identify where the disputes lie. *See e.g. Toshiba Corp. v. Imation Corp.*, Order in 09-CV-305-slc (W.D. Wis. January 19, 2010); *Semiconductor Energy Lab v. Samsung Elec.*, Order in Case No. 09-CV-01-bbc (W.D. Wis. November 4, 2009). In fact, there have been times in the past when this Court's ordinary practice was to conduct no separate Markman proceedings at all in a patent case, just construing claims as part of the summary judgment process in the first instance.

It should also be recalled in this case also that Brushstrokes' motion for claim construction was made before (1) Plaintiff had even identified the accused products in this action; and (2) before any detailed infringement contentions were served (in fact, a detailed claim-by-claim infringement chart for each product was never provided). Accordingly, Brushstrokes would not have had enough information to necessarily fully understand exactly what about its products Baratto believed infringed. If Plaintiffs would have wanted a more informed pre-summary judgment claims construction proceeding, they could have provided that information earlier in the litigation.

In any event, the proper construction of the claim term at issue is clear from the specification, and the construction adopted by the Court is the exact one that Baratto understood and proposed be adopted on summary judgment. There can be no credible claim that Baratto did not have sufficient opportunity to prepare his case because of the construction.

## IV. IF THIS COURT RECONSIDERSALTERNATIVE GROUNDS FOR SUMMARY JUDGMENT STILL RENDER SUMMARY JUDGMENT APPROPRIATE.

Even if this Court reconsiders its claim construction of the term color layer, this Court should still grant Brushstrokes summary judgment for the several other enumerated reasons in its summary judgment motion.  To the extent that Plaintiffs' motion is granted, Brushstrokes renews its motion for summary judgment on all other issues and incorporates that herein, including its motion for non-infringement, invalidity and unenforceability.

## CONCLUSION

For the reasons stated herein, Brushstrokes respectfully requests that Plaintiff's motion be denied.

Dated May 4, 2010.

                JOSEPHINE K. BENKERS

                _//s//Josephine K. Benkers_____
                Quarles & Brady LLP
                33 East Main Street
                Suite 900
                Madison, WI  53703
                Telephone:  608) 251-5000

                Attorneys for Defendant
                Brushstrokes Fine Art, Inc.

## CERTIFICATE OF SERVICE

    I, Josephine K. Benkers, am over 18 years of age and am not a party to the above action. I am a lawyer at Quarles & Brady LLP, 33 E. Main Street, Suite 900, Madison, Wisconsin 53703. I hereby certify that on May 4, 2010, I caused a true and correct copy of the foregoing document to be served through the Court's electronic case filing system to counsel listed below:

    Peter M. Reinhardt
    Bakke Norman, S.C.
    2919 Schneider Avenue
    P.O. Box 280
    Menomonie, WI 54751
    preinhardt@bakke-norman.com

    //s//Josephine K. Benkers
    Josephine K. Benkers