IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

EUGENE BARATTO and
TEXTURES, LLC,

                Plaintiffs,

   v.

BRUSHSTROKES FINE ART, INC.,

                Defendant.

OPINION AND ORDER

08-cv-657-slc

---

      In this civil action, plaintiff Eugene Baratto claimed that defendant Brushstrokes Fine Art, Inc. infringed his United States Patent No. 5,721,041 (the '041 patent), which discloses a method of reproducing the brushstrokes found in original paintings.  On March 24, 2010, I granted summary judgment in favor of Brushstrokes with respect to infringement.  Dkt. 70.  Baratto has moved for reconsideration, asking that the court alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e) or grant relief from the judgment under Rule 60(b).  Dkt. 75.  Specifically, Baratto asserts that the court unnecessarily and improperly construed the claim term "color layer" to include thermoplastic properties.  Also before the court is Brushstrokes's motion to find this case exceptional within the meaning of 35 U.S.C. § 285 and to award attorney and expert witness fees.  Dkt. 72.

      I am denying Baratto's motion because he has not established that it was a mistake of law or fact for the court to construe the claim term "color layer."  I am denying Brushstrokes's motion for attorney's fees because Brushstrokes has not established that this case is exceptional under § 285.  I am denying Brushstrokes's motion for expert witness fees because Brushstrokes has not established that Baratto pursued his claims vexatiously or in bad faith.

DISCUSSION

**I. Motion to Amend, Alter or Vacate Judgment**

The purpose of a Rule 59(e) motion is to bring to the court's attention newly discovered evidence or a manifest error of law or fact. *Bordelon v. Chicago School Reform Board of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). It is not intended as an opportunity to reargue the merits of a case. *Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363, 368 (7th Cir. 2003). Nor is a Rule 59 motion intended as an opportunity for a party to submit evidence that it could have presented earlier. *Dal Pozzo v. Basic Machinery Co., Inc.*, 463 F.3d 609, 615 (7th Cir. 2006) (citing *Frietsch v. Refco, Inc.*, 56 F.3d 825, 828 (7th Cir. 1995)). The movant must clearly establish the ground for relief. *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006) (citations omitted). Similarly, vacating a judgment under Rule 60(b) is permissible for mistake, excusable neglect, newly discovered evidence and fraud. However, it is an "extraordinary remedy" granted only in "exceptional circumstances." *Id.*

Baratto asserts that the court erred as a matter of law in construing the term color layer on summary judgment because the parties never requested construction of the term during the claims construction process in the spring and summer of 2009. At that time, Brushstrokes requested the construction of 6 claim terms but not the term color layer. Baratto opposed construction of any term, arguing that Brushstrokes failed to explain why any construction was necessary. I agreed with Baratto and declined to construe any of the proposed terms. However, I advised the parties that "Defendant may present its construction of the 6 terms at summary judgment or trial." Dkt. 27, at 2. In its motion for summary judgment, Brushstrokes argued a construction of the term color layer to which Baratto objected and responded. As Brushstrokes notes, I adopted Baratto's proposed construction of the term.

Although this court's usual practice is to address claims construction in a separate process before the deadline for filing dispositive motions, *see* Prelim Pretr. Conf. Ord., dkt. 15, at 2-4, this does not mean that the parties thereafter are barred from seeking construction of claim terms. As it did in this case, this court routinely advises parties that they are free to seek construction of claim terms when they file motions for summary judgment. *See, e.g., Semiconductor Energy Laboratory Co., Ltd. v. Samsung Electronics*, 2009 WL 3731959, *1 (W.D. Wis. Nov. 4, 2009); *IP Cleaning S.p.A. v. Annovi Reverberi, S.p.A.*, 2008 WL 5119586, *1 (W.D. Wis. Dec. 4, 2008). The fact that I stated in the claims construction order that Brushstrokes could raise its proposed construction of the six terms at summary judgment is of no matter. District courts have an obligation to construe any claim term when it is necessary to resolve a genuine and material legal dispute between the parties. *O2 Micro Intern. Ltd. v. Beyond Innovation Technology Co., Ltd.*, 521 F.3d 1351, 1362-63 (Fed. Cir. 2008). If during summary judgment or trial a party demonstrates the need for clarification in order to resolve a material dispute, then the court will clarify. Here, the term "color layer" was at the center of the parties' dispute over infringement, a circumstance that should not have surprised Baratto. Baratto had ample opportunity to respond to Brushstrokes's proposed construction; he even offered his own proposed construction, which the court ultimately adopted.

So here we are: the court adopted Baratto's proposed construction of the term "color layer: and now he argues that the court improperly read a limitation from the patent specification into the claim. Claim 1 of the '041 patent discloses an art reproduction having a "colored sheet comprising a color layer and a flexible thermoplastic sheet comprising a color layer and a flexible adhesive disposed between the substrate and the sheet." The patent specification

instructs that the "colored sheet of the invention comprises a thermoplastic layer and a printed color layer that is also thermoplastic." Col. 5, lns. 28-30. It further states that thermoplastic means "the material exhibits plastic deformation or flow when heated." *Id.* at lns. 30-33. The specification later clarifies that "the thermoplastic layer or film is printed to provide a colored sheet, *i.e.*, a printed sheet, having a thermoplastic layer and a printed or colored image layer." Col. 6, 47-51.

In opposition to summary judgment, Baratto argued that the color layer is not necessarily a second thermoplastic layer but rather can be the printed ink itself, which has thermoplastic properties. Dkt. 52, at 12-13. Brushstrokes, on the other hand, asserted that the colored sheet must be comprised of 2 plastic layers fused together as opposed to a single plastic layer that is printed with non-thermoplastic ink. Finding that nothing in the claim language or the specification states that the colored sheet has to include 2 plastic layers, I adopted Baratto's proposed construction and concluded that the color layer does not have to be plastic in order to be thermoplastic; it only needs to act like plastic when heated. However, because Baratto failed to submit admissible evidence showing that the ink used in the accused products is thermoplastic, I found that he could not show that those products infringed the '041 patent.

Baratto now pulls an about-face and attempts to find fault with his own proposed construction by stating that the term color layer should not be defined as having thermoplastic properties. As Brushstrokes notes, to the extent that Baratto is seeking a new or different construction of the term color layer in his motion for reconsideration, that argument is waived. *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1296 (Fed. Cir. 2005) (proposed claim construction that altered claim scope and raised for first time on appeal invokes doctrine of

waiver); *Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1346 (Fed. Cir. 2001) (noting appropriateness of waiver when the scope of claim construction is changed); *American Standard, Inc. V. York Int'l Corp.*, 244 F. Supp. 2d 990, 993 (W.D. Wis. 2002) (citing *Interactive*, 256 F.3d at 1346) (claim construction arguments raised for first time in post-trial motion were waived). However, even if Baratto merely is clarifying or defending the original scope of his proposed claim construction, as he is allowed to do, he has not shown that the construction adopted by the court was erroneous. *Interactive*, 256 F.3d at 1346 (waiver doctrine only precludes adoption of *new* claim construction position on appeal).

Although I looked to the specification for guidance on the meaning of color layer, I did not read a limitation into the claim that was not present in the claim itself. As recited above, claim 1 discloses an "art reproduction comprising a substrate, a textured colored sheet comprising a color layer and a flexible thermoplastic sheet comprising a color layer and a flexible adhesive disposed between the substrate and the sheet." Baratto argues that the use of the term thermoplastic in the claim language is limited to the flexible sheet. However, it is clear from the claim language that the color layer is part of the flexible sheet and, as such, is thermoplastic. The specification merely makes this explicit in instructing that the printed color layer also is thermoplastic. It does not add a limitation not present in the claim itself. As the Federal Circuit has instructed:

> The claims, of course, do not stand alone. Rather, they are part of "a fully integrated written instrument," [*Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 978 (Fed. Cir. 1995)], consisting principally of a specification that concludes with the claims. For that reason, claims "must be read in view of the specification, of which they are a part." *Id.* at 979. As we stated in *Vitronics* [*Corp. v. Conceptronic, Inc.*], the specification "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the

> single best guide to the meaning of a disputed term." [90 F.3d 1576, 1582 (Fed. Cir. 1996).]

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005).

In short, Baratto has not clearly established that the court erred in construing the term "color layer" by referring to the specification for guidance or that this is one of those rare cases in which he should be awarded relief from judgment.

**II. Motion for Attorney's Fees and Expert Witness Fees**

Ordinarily, the American Rule governs the awarding of attorney fees in patent cases, as it does in most civil litigation. Under that rule, the prevailing party absorbs its own costs and fees. The rule does not apply if a prevailing party can show both that it has a source of authority allowing recoupment of those costs and fees, such as a statute or contractual agreement and that it meets the criteria for an award under that authority. The Federal Circuit has made it clear that 35 U.S.C. § 285, which allows the court in exceptional cases to award reasonable attorney fees to the prevailing party, is an exception to the American Rule and "a change to the pre-1946 practice of not awarding attorney fees based upon equitable considerations in patent cases." *Forest Laboratories, Inc. v. Abbott Laboratories*, 339 F.3d 1324, 1329 (Fed. Cir. 2003) (citation omitted). Nonetheless, in passing § 285, Congress noted that "'[i]t is not contemplated that the recovery of attorney's fees will become an ordinary thing in patent suits.'" *Id.* (quoting *Rohm & Haas Co. v. Crystal Chemical Co.*, 736 F.2d 688, 690-91 (Fed. Cir. 1984) (internal quotation omitted)). Section 285 aims to prevent "gross injustice" resulting from bad faith litigation, *Beckman Instruments Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1552 (Fed. Cir. 1989), and to deter parties from bringing "clearly unwarranted suits." *Mathis v. Spears*, 857 F.2d 749, 754

(Fed. Cir. 1998).  In other words, a court may find a case exceptional if the conduct of the losing party would make it grossly unjust for the prevailing party to be left with the burden of litigation expenses.  *Badalamenti v. Dunham's, Inc.*, 896 F.2d 1359, 1364 (Fed. Cir. 1990).

Because § 285 authorizes only attorney's fees, Brushstrokes's request for reimbursement of its expert witness fees falls under the general cost statute, 28 U.S.C. § 1920, and is limited by § 1821(b).  *Amsted Industries Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 376-77 (Fed. Cir. 1994).  As Brushstrokes notes, federal courts have the inherent power to impose sanctions in the form of a reasonable expert fee award when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Id.* at 378 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991)); *see also Takeda Chemical Industries, Ltd. v. Mylan*, 549 F.3d 1381, 1391 (Fed. Cir. 2008) (applying *Chambers* and upholding expert fee award where trial court found bad faith and vexatious litigation conduct).  Therefore, this standard is similar to the requirements for exceptional case recovery under § 285 and can be applied in conjunction with it.

Courts presume that a party acts in good faith in alleging infringement of a duly granted patent.  *Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GMBH et als.*, 603 F.3d 943, 954 (Fed. Cir. 2010).  However, a "case may be deemed exceptional when there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Fed. R. Civ. P. 11, or like infractions."  *Brooks Furniture Mfg., Inc. v. Dutailier Intern., Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005).  Where there is no misconduct in securing the patent or during the course of litigation, then it must be shown that the lawsuit was brought in "subjective bad faith" and that the suit was "objectively

baseless." *Id.* Factors relevant to this inquiry include "closeness of the question, pre-filing investigation and discussions with defendant, and litigation behavior." *Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1379 (Fed. Cir. 2008). The exceptional nature of the case must be established by clear and convincing evidence. *Medtronic*, 603 F.3d at 954.

Here, Brushstrokes's concerns primarily arise from Baratto's inadequate pre-litigation investigation, which is a relevant consideration in the "exceptional case" analysis. *Epcon Gas Systems, Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1035 (Fed. Cir. 2002). Brushstrokes accuses Baratto of: (1) failing to obtain and analyze samples of the hundreds of types of Brushstrokes art reproductions that he wished to accuse before filing suit; (2) never taking steps to determine whether similar products made by his predecessor, Atelier, were prior art that anticipated his patent; (3) making a baseless allegation that Brushstrokes willfully infringed the '041 patent; (4) unnecessarily delaying the filing of his lawsuit for 10 years; and (5) refusing to identify his infringement allegations to Brushstrokes prior to filing suit.

Courts have found Fed. R. Civ. P. 11 standards helpful in determining whether an infringement investigation was frivolous or unreasonable because it was unjustified. *See Superior Fireplace Co. v. Majestic Prods. Co.*, 270 F.3d 1358, 1377 (Fed. Cir. 2001); *Taurus IP, LLC v. DaimlerChrysler Corp.*, 559 F. Sup. 2d 947, 967-68 (W.D. Wis. 2008); *Micromesh Technology Corp. v. American Recreation Products, Inc.*, 2007 WL 2501783, *3 (N.D. Cal. Aug. 30, 2007). "In the context of patent infringement actions, we have interpreted Rule 11 to require, at a minimum, that an attorney interpret the asserted patent claims and compare the accused device with those claims before filing a claim alleging infringement." *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1300-01 (Fed. Cir. 2004).

### A. Inadequate Pre-Suit Investigation

Brushstrokes takes issue with the fact that although Baratto accused hundreds of its products, he only analyzed a few unidentified samples of the IKEA Hallaryd brand before filing suit. Brushstrokes asserts that Baratto should have obtained and analyzed samples of all of the art reproductions (not just the IKEA samples) that he wished to accuse before filing suit.

In response, Baratto avers that, prior to filing suit in November 2008, he personally inspected 32 to 47 different Brushstrokes art reproductions, including both the polystyrene and PVC versions. Baratto avers that he was qualified to perform this analysis because he has extensive experience working with plastic films, canvas backings and coated abrasives. Baratto's attorney, Joel Skinner, avers that prior to Baratto filing suit, he reviewed the '041 patent and its file history, Baratto's correspondence with Brushstrokes, Brushstrokes's patent and information about Brushstrokes's products. Skinner also assisted in preparing a letter to defense counsel about Baratto's infringement allegations. Attorney Peter Reinhardt submitted copies of letters dated June 29, 2007 and January 14, 2008 that he sent to defense counsel on behalf of Baratto regarding his claims analysis and product testing that had been performed on Brushstrokes's products. Also before filing suit, Baratto retained Jeff Emslander, an expert in materials science at 3M, to perform tests on 3 additional product samples. Brushstrokes objects to this evidence on the grounds that Baratto never revealed this additional testing in his response to summary judgment.[1]

---

[1] To avoid having to adduce evidence regarding every accused product on summary judgment, Baratto attempted to show through expert testimony that every product made by Brushstrokes actually functions in the same manner. This attempt to group Brushstrokes's products failed because Baratto only successfully produced evidence regarding the functioning of 4 Hallaryd brand art reproductions.

Having reviewed the record, I am not persuaded that an award of attorney's fees is necessary to avoid gross injustice to Brushstrokes. *Rohm & Haas Co*, 736 F.2d at 691. Although Baratto failed to prove his infringement claim, it is reasonable to infer from his pre-filing investigation that all of Brushstrokes's products satisfied the limitations of claim 1 of the '041 patent. Baratto and his expert tested samples from each of the product groups (PVC and polystyrene) containing various texture ranges. Baratto's attorneys then compared those results to their previous analysis of the '041 patent and concluded that Brushstrokes's products infringed. Brushstrokes challenges the veracity of these averments, but it has offered no evidence to support its suspicion that this claimed additional testing and investigation never took place.

As the Federal Circuit has instructed:

> To be sure, when a number of different products are charged with infringement it is not always necessary for the plaintiff's attorneys to inspect each product separately to verify the facts on which the plaintiff bases its infringement allegations. At a minimum, however, the evidence uncovered by the patent holder's investigation must be sufficient to permit a reasonable inference that all the accused products infringe.

*Antonious v. Spalding & Evenflo Companies, Inc.*, 275 F.3d 1066, (Fed. Cir. 2002). The fact that Baratto neglected to present, or inadequately presented, all of his evidence to the court does not mean that his lawsuit was frivolous. Although Baratto may not have performed a perfect or thorough pre-filing investigation, Brushstrokes has failed to show by clear and convincing evidence that the investigation was not a reasonable one. *See Vehicle IP, LLC v. General Motors Corp.*, 2008 WL 2273682, *3 (W.D. Wis. Jun. 2, 2008).

**B. Inadequate Invalidity Analysis**

Brushstrokes asserts that, because Baratto knew that his products and processes had been used first by Atelier (Brushstrokes's predecessor) and then by Brushstrokes well before the '041 patent was issued, Baratto first should have attempted to determine whether the Atelier products were different from those disclosed in the '041 patent.  In support, Brushstrokes points out that on summary judgment Baratto failed to dispute the proposed fact that "Brushstrokes and its predecessor, Atelier, always have used approximately the same processes and materials to produce their art reproductions."  Brushstrokes contends that Baratto's admitted knowledge of Atelier's processes and products "raise questions about whether there may have been inequitable conduct in Baratto's procurement of his patent."  Dkt. 73, at 3, n. 2.

Brushstrokes's conjecture is not enough to convince the court that there has been a "gross injustice" necessitating sanctions.  As Baratto notes, the court made minimal findings related to invalidity and did not decide this issue.  Therefore, not only is Brushstrokes not a prevailing party, there is no clear and convincing evidence before the court that Baratto either committed inequitable conduct in procuring the patent or attempted to enforce it in bad faith.

**C. Baseless Allegation of Willful Infringement**

Brushstrokes's next argument fails for similar reasons.  Brushstrokes contends that Baratto's willful infringement claim was objectively baseless and tacked on to inflate the value of the case.  However, Brushstrokes has failed to establish this contention with clear and convincing evidence, merely stating generally that "on no reasonable view of the acts and evidence in this case could one conclude that there was even a case for willfulness here."  Dkt.

11

73, at 4. Baratto's willfulness claim was not at issue on summary judgment, so the record is paltry on this issue. Without more, Brushstrokes cannot prove that Baratto pursued a frivolous claim.

### D. Pre-Filing Delay and Refusal to Articulate Allegations

Finally, Brushstrokes briefly argues that despite knowing about Brushstrokes and Atelier products since the mid-1990s, Baratto did not file suit until 2008. It further asserts that Baratto refused to identify his particular infringement allegations to Brushstrokes before filing suit. Delay alone, without evidence of misconduct or bad faith, does not make this case an exceptional one. The term "exceptional" means just that. *See, e.g., Third Wave Technologies, Inc. v. Stratagene Corp.*, 405 F. Supp. 2d 991, 1015-18 (W.D. Wis. 2005) (finding exceptional case where party gave untruthful answers to interrogatories, disobeyed court orders, unilaterally canceled depositions, violated protective order and asserted wholly unsupported defenses and frivolous responses to findings of fact on summary judgment). Here, it is unclear from the facts proffered on summary judgment exactly what Baratto knew about Brushstrokes and its products or when he ascertained such knowledge. Brushstrokes's motion does not clarify this. Also, it is unclear from the parties' submissions how much contact Baratto had with Brushstrokes prior to filing suit, although it is evident that some occurred. Baratto has produced three letters dated over the course of years, and one of those letter makes clear that there was more correspondence.

Baratto's acts and omissions obviously have irritated Brushstrokes, but the record does not establish that this conduct was so unusual or so egregious as to justify shifting the cost of this lawsuit. Because Brushstrokes has failed to prove by clear and convincing evidence that this

is an exceptional case or that Baratto pursued his claim vexatiously or in bad faith, it is not entitled to payment of its attorney and expert fees.

ORDER

It is ORDERED that:

(1) Plaintiff Eugene Baratto's motion for reconsideration and to amend or alter judgment (dkt. 75) is DENIED; and

(2) Defendant Brushstrokes Fine Art, Inc.'s motion to find case exceptional within 35 U.S.C. § 285 and award attorney and expert fees (dkt. 72) is DENIED.

Entered this 1st day of November, 2010.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge